UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 15 CR 448 |
| v. | ) | |
| | ) | |
| RICHARD THOMPSON | ) | Emergency Judge Robert Dow |
| | ) | |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S EMERGENCY MOTION FOR RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby provides its response in opposition to defendant Richard Thompson's emergency motion for release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

As explained below, this Court should deny Thompson's motion because he has not complied with the statutory requirement in 18 U.S.C. § 3582(c)(1)(A) that he fully exhaust administrative remedies within the Bureau of Prisons ("BOP"), or, in the alternative, should continue the motion to allow the BOP the proper time to consider defendant's request for compassionate release. In either case, the government would have no objection to the Court making a recommendation to the BOP, as suggested in the Court's order of April 16, 2020, Dkt. 75, concerning Thompson's requests.

## BACKGROUND

### *Offense Conduct and Procedural History*

On July 21, 2015, defendant Richard Thompson was charged in an information with wire fraud, in violation of 18 U.S.C. § 1343. The charges arose from a two-year investment

fraud scheme in which Thompson obtained more than $2 million dollars from 54 investors by falsely representing that their money would be put toward creating vacation property developments in Tennessee, North Carolina, and Florida, and that their investments were secured by large tracts of real estate owned by his company. Instead of spending the investors' money as promised, Thompson used it to pay personal expenses and make Ponzi-type payments to some investors. As a result of the Thompson's fraud scheme, investors lost a total of approximately $2.2 million, causing many of them severe financial hardship including, for some, the loss of their entire life savings.

Thompson pleaded guilty on July 19, 2016, and was sentenced on May 10, 2017, to serve a term of 48 months' imprisonment, followed by a two-year term of supervised release. Thompson was also ordered to pay restitution in the total amount of $2,265,572.

### Current Status

Thompson is currently incarcerated at FCI Butner (Medium I), and with good-time credit, the BOP projects Thompson's release date as December 19, 2020.

On or about March 24, 2020, U.S. Probation submitted a Home Detention referral to the BOP, in which it recommended that Thompson be placed in Home Detention. Probation advised the BOP that it had conducted an investigation relating to the defendant's proposed release plan, whereby defendant would reside with friends in Frostproof, Florida, and had approved the location identified in that plan.

After review, BOP determined that defendant Thompson would be designated to a Residential Re-Entry Center (RRC) instead of being placed directly in Home Detention. Probation advised Thompson that he was being designated to the RRC, and asked

2

Thompson whether he would accept the RRC placement. Thompson stated that he would accept the RRC placement, and signed a Release form agreeing to the RRC placement. Thompson was then scheduled to be transferred to the RRC on April 22, 2020.

After defendant requested that Thompson be transferred directly to home confinement, the BOP altered its plan, and ordered his transfer directly to home confinement. Thompson's transfer to home confinement is now scheduled for April 29, 2020. This transfer will remove Thompson from the COVID-19 threat that exists in the Butner facility where he is now being housed.

According to defense counsel, counsel emailed his defendant's request for compassionate release or home confinement to the warden of his institution and BOP Regional Counsel on April 15, 2020.

## ARGUMENT

As explained below, defendant has not complied with the statutory exhaustion requirement for compassionate release motions. That statutory exhaustion requirement in § 3582(c)(1)(A) cannot be waived or overridden by the courts—particularly not in this case, given that defendant submitted his request for compassionate release only two days ago, on April 15, 2020.

**A.    Thompson has not complied with the statutory exhaustion requirement for compassionate release requests.**

**1.    The statutory exhaustion requirement and its implementing regulations.**

As amended by Section 603(b) of the First Step Act of 2018, Pub. L. 115-391, Title 18, United States Code, Section 3582(c)(1)(A) provides:

[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Direct of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.* (emphasis added). This "statutory exhaustion requirement . . . must be strictly enforced." *United States v. Monzon*, No. 99 CR 157, 2020 WL 550220, at *2 (S.D.N.Y. Feb. 4, 2020).

Section 603(b) of the First Step Act also required BOP to make inmates aware of the procedures for initiating compassionate release requests.

The Bureau of Prisons shall, subject to any applicable confidentiality requirements—

(C) ensure that all Bureau of Prisons facilities regularly and visibly post, including in prisoner handbooks, staff training materials, and facility law libraries and medical and hospice facilities, and make available to prisoners upon demand, notice of—

       (i)     a defendant's ability to request a sentence reduction pursuant to subsection (c)(1)(A);

       (ii)    the procedures and timelines for initiating and resolving requests described in clause (i); and

       (iii)   the right to appeal a denial of a request described in clause (i) after all administrative rights to appeal within the Bureau of Prisons have been exhausted.

18 U.S.C. § 3582(d)(2)(C); *see also id.* at §§ 3582(d)(2)(B) (notification procedure for inmates who are "physically or mentally unable to submit a request for a sentence reduction").

    BOP has also established an orderly process for receiving and considering compassionate release requests by inmates.

    A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden. Ordinarily, the request shall be in writing, and submitted by the inmate. An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing. The inmate's request shall at a minimum contain the following information:

    (1)   The extraordinary or compelling circumstances that the inmate believes warrant consideration.

    (2)   Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

28 C.F.R. § 571.61(a). BOP "processes a request made by another person on behalf of an inmate [for example, defendant's counsel] in the same manner as an inmate's request." *Id.* § 571.61(b).

BOP's regulations also establish procedures for the consideration of compassionate release requests by the Warden, General Counsel, and Director of BOP. *Id*. § 571.62(a). If a request for compassionate release is denied at any level of BOP's internal review process, the inmate is entitled to "written notice and a statement of reasons for the denial." *Id.* at § 571.63. Consistent with the statutory exhaustion requirement, BOP's program statement on compassionate release requests states that "an inmate may file a request for a reduction in sentence with the sentencing court after receiving a BP-11 response [from the Warden] under subparagraph (a), the denial from the General Counsel under subparagraph (d), or the lapse of 30 days from the receipt of such a request by the Warden of the inmate's facility, whichever is earlier." *See* BOP Program Statement No. 5050.50 (rev. Jan. 17, 2019), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited Apr. 10, 2020).

BOP's regulations make clear that "[i]n the event the basis of the request is the medical condition of the inmate, staff shall expedite the request at all levels." *Id*. at § 571.62(c).

BOP's receipt and consideration of compassionate release requests occurs against the backdrop of an annual reporting requirement to Congress. 18 U.S.C. § 3582(d)(3). By requiring BOP to submit annual reports about its handling of compassionate release requests, Congress clearly understood the importance of requiring inmates to submit requests through established BOP channels.

**2.      Thompson has not complied with the statutory exhaustion requirement.**

According to counsel, Thompson's requests for compassionate release and home confinement were emailed to the Warden and BOP Regional counsel on or about April 15, 2020. As a result, defendant has not complied with the statutory exhaustion requirements set forth in § 3582(c)(1)(A).

**B.      Thompson's failure to comply with the statutory exhaustion requirement leaves the Court with no authority to grant the relief he seeks.**

In *United States v. Taylor*, 778 F.3d 667 (7th Cir. 2015), the Seventh Circuit held that "district courts have subject-matter jurisdiction over—that is, the power to adjudicate—a § 3582(c)(2) motion even when authority to grant a motion is absent because the statutory criteria are not met." *Id*. at 670 (noting circuit split on whether statutory criteria for relief under § 3582(c) are jurisdictional). *Taylor* made clear that the statutory criteria for seeking a sentence reduction under § 3582(c) "may be mandatory and even strict" even though they do not rise to the level of being jurisdictional requirements. *Id*.

Since *Taylor*, the Seventh Circuit has consistently affirmed the denial of sentence reduction motions under § 3582(c)(2) on the ground that where the defendant failed to meet the statutorily specified criteria, the district court lacked authority to grant relief. *See e.g., United States v. Jehan*, 876 F.3d 891, 895 (7th Cir. 2017) (affirming district court's denial of motion under § 3582(c)(2) on the ground that she lacked authority to reduce sentence because one of the statutory criteria—that defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the

7

Sentencing Commission"—had not been met); *see also United States v. Claiborne*, No. 17-1763, 2017 WL 4621217, at *1 (7th Cir. Sept. 28, 2017) (same); *United States v. Howard*, No. 17-1947, 2017 WL 9485590, at *2 (7th Cir. Sept. 28, 2017) (same); *United States v. Koglin*, 822 F.3d 984, 986 (7th Cir. 2016) (same); *United States v. Jackson*, 637 F. App'x 223, 224 (7th Cir. 2016) (same); *United States v. McCarroll*, 811 F.3d 975, 977-78 (7th Cir. 2016) (same); *see also United States v. Taylor*, 627 F.3d 674, 676 (7th Cir. 2010) (same).

This long line of cases establishes that when a defendant fails to meet the statutory criteria in § 3582(c) for seeking a sentence reduction—such as defendant's failure to comply with the statutory exhaustion requirement—courts lack authority to grant relief. Courts have applied this same principle in denying motions for release based on COVID-19 when defendants have not complied with the statutory exhaustion requirement. *See United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (describing defendant's failure to comply with statutory exhaustion requirement as "a glaring roadblock foreclosing compassionate release at this point" and stressing that BOP's "extensive and professional efforts to curtail [COVID-19's] spread" underscore the importance of "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement");[1] *United*

---

[1] As the above cases make clear, § 3582(c)(1)'s exhaustion requirement is mandatory, even if not jurisdictional. The government assumes here for purposes of argument that the Seventh Circuit would hold, consistent with *Taylor*, that §3582(c)(1)'s exhaustion requirement is a mandatory, non-jurisdictional rule. The government maintains for the purpose of preserving the issue for possible further review that the exhaustion requirement is jurisdictional, as most other circuit courts have held in the context of § 3582(c)(2). *See, e.g., United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010); *United States v. Williams*, 607 F.3d 1123, 1125-26 (6th Cir. 2010); *United States v. Auman*, 8 F.3d 1268, 1271 (8th Cir. 1993), *overruled on other grounds by United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016); *United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012);

*States v. Allegra*, Case No. 15 CR 243, (N.D. Ill. April 13, 2020) (Bucklo, J.) ("I join the many courts that have concluded that § 3582's explicit exhaustion requirement is not susceptible to any judicially created exceptions."); *United States v. Epstein*, No. CR 14-287 (FLW), 2020 WL 1808616, at *2 (D.N.J. April 9, 2020); *United States v.Carter*, No. 1:18-CR-00086-JMS-DML, 2020 WL 1808288 (S.D. Ind. Apr.9, 2020); *United States v. Hofmeister*, No. CV 5:16-13-KKC, 2020 WL 1811365 (E.D. Ky. Apr. 9, 2020); *United States v. Fevold*, No. 19-CR-150, 2020 WL 1703846, (E.D. Wis. Apr. 8, 2020); *United States v. Johnson*, No. RDC-14-0441, 2020 WL 1663360 (D. Md. Apr. 3, 2020); *United States v. Zywotko*, No. 2:19-cr-113-FtM-60NPM, 2020 WL 1492900, (M.D. Fla. Mar. 27, 2020); *United States v. Eberhart*, Case No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020).

Because defendant has not complied with the statutory exhaustion requirements in § 3582(c)(1)(A), this Court cannot grant him the relief he seeks.

### C. Even if the statutory exhaustion requirement could be waived, Thompson has not established grounds for waiver.

Contrary to Thompson's contention, the statutory exhaustion requirement for compassionate release motions cannot be waived by courts. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[w]here Congress specifically mandates, exhaustion is required"); *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016) (rejecting as "freewheeling" lower court's

---

*United States v. Graham*, 704 F.3d 1275, 1279 (10th Cir. 2013); *United States v. Mills*, 613 F.3d 1070, 1078 (11th Cir. 2010); *see also United States v. Higgs*, 504 F.3d 456 (3d Cir. 2007) (canvassing history of judicial treatment of Rule 35 as jurisdictional and holding that Rule 35(a) and Section 3582(c)(1)(B) remains jurisdictional after *Bowles v. Russell*, 551 U.S. 205, 212-13 (2007)).

creation of "special circumstances" exception to statutory exhaustion requirement and permitting only the exception expressly defined by statute).

In *McCarthy v. Madigan*, the Supreme Court addressed a district court's dismissal for failure to exhaust administrative remedies a prisoner's *Bivens* action seeking money damages for denial of medical care. 503 U.S. 140. The Court held that the prisoner was not required to exhaust administrative remedies provided by the BOP's grievance procedure prior to seeking judicial relief. In so doing, the Court was careful to distinguish between the judicial doctrine being advanced in the case before it and other settings in which Congress had specifically mandated exhaustion:

> The doctrine of exhaustion of administrative remedies is one among related doctrines—including abstention, finality, and ripeness—that govern the timing of federal-court decisionmaking. Of "paramount importance" to any exhaustion inquiry is congressional intent. *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 501, 102 S.Ct. 2557, 2560, 73 L.Ed.2d 172 (1982). Where Congress specifically mandates, exhaustion is required. *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 579, 109 S.Ct. 1361, 1371, 103 L.Ed.2d 602 (1989); Patsy, 457 U.S., at 502, n. 4, 102 S.Ct., at 2560, n. 4. But where Congress has not clearly required exhaustion, sound judicial discretion governs. *McGee v. United States*, 402 U.S. 479, 483, n. 6, 91 S.Ct. 1565, n. 6, 29 L.Ed.2d 47 (1971). See also *Patsy*, 457 U.S., at 518, 102 S.Ct., at 2568 (WHITE, J., concurring in part) ("[E]xhaustion is 'a rule of judicial administration,' ... and unless Congress directs otherwise, rightfully subject to crafting by judges"). Nevertheless, even in this field of judicial discretion, appropriate deference to Congress' power to prescribe the basic procedural scheme under which a claim may be heard in a federal court requires fashioning of exhaustion principles in a manner consistent with congressional intent and any applicable statutory scheme. *Id.*, at 501–502, and n. 4, 102 S.Ct., at 2560, and n. 4.

*Id.* at 144. The Court went on to discuss principles driving the use of judicial discretion to excuse administrative exhaustion where Congress has not explicitly mandated it. Id. at 145-

46. In this context, the Court described three broad sets of circumstances for courts to consider when deciding whether to require administrative exhaustion. *Id.* at 146-47. But this discussion did not call into question the Court's unequivocal statement: "Where Congress specifically mandates, exhaustion is required." *Id.* at 144.

In *Gonzalez v. O'Connell*, 355 F.3d 1010 (7th Cir. 2004), the Seventh Circuit explained that the judicial discretion described in *McCarthy* applies *only* where Congress has not clearly required exhaustion, and that it is only the judicial exhaustion doctrine that is not absolute:

> "[W]here Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). In exercising that discretion, we must balance the individual and institutional interests involved, taking into account "the nature of the claim presented and the characteristics of the particular administrative procedure provided." *Id.* at 146, 112 S.Ct. 1081. We start with "the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *Id.* at 144-45, 112 S.Ct. 1081; *see also Sanchez v. Miller,* 792 F.2d 694, 697 (7th Cir.1986) (accord). This rule, however, is not absolute.

*Id.* at 1016; *see id.* at n.5 ("*McCarthy*'s principle that when exhaustion is not statutorily mandated, 'sound judicial discretion governs,' . . . remains good law, as does its further admonitions on how that discretion should be utilized.") (citation omitted).

Other circuits agree that, where Congress has mandated exhaustion, exhaustion is required. *See, e.g., Anversa v. Partners Healthcare System, Inc.*, 835 F.3d 167 (1st Cir. 2016) ("Where, as here, Congress has not mandated exhaustion, federal courts have some leeway to relax this requirement."); *Karam v. U.S. Citizenship & Immigration Servs.,* 373 F. App'x 956, 958 (11th Cir. 2010) ("'[a]lthough judicially developed exhaustion requirements might be waived for discretionary reasons by courts, statutorily created

11

exhaustion requirements bind the parties and the courts.'") (citation omitted); *Hettinga v. United States*, 560 F.3d 498, 502–03 (D.C. Cir. 2009) ("Parties have long been required to exhaust administrative remedies before seeking relief from federal courts, [. . .] 'Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs.'"); *Zephyr Aviation, L.L.C. v. Dailey*, 247 F.3d 565, 570 (5th Cir. 2001) ("'Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs.'") (citation omitted); *Kurfees v. I.N.S.,* 275 F.3d 332, 336 (4th Cir. 2001) ("Moreover, where Congress has explicitly mandated exhaustion [of administrative remedies], as it has in INA § 106(c), the Supreme Court has held that the requirement must be enforced."); *Lavista v. Beeler*, 195 F.3d 254, 256 (6th Cir. 1999) ("*McCarthy* recognized that when Congress specifically mandates exhaustion, it is required and the courts may not excuse the requirement."); *United States v. Dico, Inc.,* 136 F.3d 572, 575–76 (8th Cir. 1998) ("[Administrative] exhaustion 'is required where Congress imposes an exhaustion requirement by statute.'") (citation omitted); *Wang v. Reno*, 81 F.3d 808, 814 (9th Cir. 1996) ("[W]here Congress has not specifically mandated exhaustion, we conclude that consistent with congressional intent and the INA, the district court properly exercised jurisdiction over Wang's due process claim even though he had not exhausted administrative remedies with respect to his excludability."); *Bailey v. United States*, 992 F.2d 1222 (10th Cir. 1993) ("Exhaustion of administrative remedies is a statutory prerequisite to recover monetary damages under the FTCA. [. . .] 'Where

12

Congress specifically mandates, exhaustion is required.'"). *See also Nyhuis v. Reno*, 204

F.3d 65, 73 (3d Cir. 2000), which stated:

> Before § 1997e(a) was amended, it did not require exhaustion, but rather, vested power in the federal courts to make such determinations. Therefore, the "sound discretion" of courts governed, [. . .] and courts were free to recognize a futility exception. Section 1997e(a), as amended, however, eliminates such discretion. It "specifically mandates" that inmate-plaintiffs exhaust their available administrative remedies, [. . .] Accordingly, as Congress has now "clearly required" exhaustion in § 1997e(a), [. . .] "it is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."

In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court considered whether a

prisoner bringing a § 1983 action against correctional officers was required to exhaust his

administrative remedies. The Court held that a court may not excuse an inmate's failure to

exhaust administrative remedies prior to bringing suit under the Prison Litigation Reform

Act, even to take "special circumstances" into account. *Id.* at 1855. The Court stated:

> The Prison Litigation Reform Act of 1995 (PLRA) mandates that an inmate exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions. 42 U.S.C. § 1997e(a). The court below adopted an unwritten "special circumstances" exception to that provision, permitting some prisoners to pursue litigation even when they have failed to exhaust available administrative remedies. Today, we reject that freewheeling approach to exhaustion as inconsistent with the PLRA.

*Id.* at 1854–55. The Court remanded the case solely for the district court to consider

whether the statutory exception to exhaustion provided in the PLRA applied. *Id.* at 1855.

The PLRA states: "No action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are

exhausted." 42 U.S.C. § 1997e(a). Similarly, as amended by Section 603(b) of the First

Step Act, Title 18, United States Code, Section 3582(c)(1)(A) provides: "[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . ."

The Seventh Circuit has applied *Ross* in affirming district courts' dismissals of claims for failure to exhaust administrative remedies under the PLRA. *See, e.g., Tonn v. Meisner*, 669 F. App'x 800, 801 (7th Cir. 2016); *Morrow v. Hood*, 653 F. App'x 469, 470 (7th Cir. 2016). Moreover, courts have applied *Ross* outside the context of the PLRA. For example, the Sixth Circuit in the context of a claim for benefits under the Black Lung Benefits Act stated:

> We lastly ask whether any exception to the exhaustion mandate saves the constitutional claims. When it comes to exceptions, a sharp divide separates statutory from prudential exhaustion. For exhaustion rules that originate with a clear *statutory command*, courts have "refus[ed] to add unwritten" exceptions on top of those in the text itself. *Ross*, 136 S. Ct. at 1857. For exhaustion rules that originate with *judicial prudence*, courts have felt free to adopt "judge-made exceptions" in the same prudential fashion. *Id.* In that setting, courts have developed several standard exceptions, including a "futility" exception for parties who assert claims that an agency cannot consider, *see McCarthy*, 503 U.S. at 147–49, 112 S.Ct. 1081, and a "hardship" exception for parties who face undue harm from agency exhaustion, *see McKart*, 395 U.S. at 197, 89 S.Ct. 1657.

*Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 751 (6th Cir. 2019), *reh'g denied* (Sept. 24, 2019); *see also Free v. Peikar*, 778 F. App'x 491, 492 (9th Cir. 2019) (dismissing *Bivens* action.)

In arguing that the statutory exhaustion requirements need not be met in his case, defendant cites *Washington v. Barr*, 925 F.3d 109, 118-19 (2d Cir. 2019), for the proposition that the courts can waive the statutory exhaustion requirement in § 3582(c)(1)(A). *Washington*, however, is inapposite for several reasons. First, *Washington* was a civil suit challenging the classification of marijuana as a Schedule I drug under the Controlled Substances Act and did not purport to examine the statutory exhaustion requirement in § 3582(c)(1)(A). Second, *Washington* addressed an exhaustion requirement that was judge-made, rather than statutory, and the court actually acknowledged the Supreme Court's holding in *McCarthy v. Madigan*, that "[w]here Congress specifically mandates, exhaustion is required." *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). For the same reasons, the district court cases available on Westlaw upon which defendant relies are equally unavailing.

Even if statutory exhaustion requirements were subject to the exceptions noted in *Washington*, waiver would be inappropriate in this case. The court in *Washington* identified three bases for excusing exhaustion in the context of non-statutory, judge-made exhaustion requirements. Specifically, citing *McCarthy*, the *Washington* court noted that "exhaustion may be unnecessary where it would be futile, either because agency decision-makers are biased or because the agency has already determined the issue." *Washington*, 925 F.3d at 118. Second, the court noted that "[t]he Supreme Court has further stated that exhaustion may be unnecessary where the administrative process would be incapable of granting adequate relief." *Id*. at 119. "Finally, exhaustion may be unnecessary where pursuing agency review would subject plaintiffs to undue prejudice." *Id*.

15

There is no basis to find that directing defendant to pursue administrative remedies within BOP would be futile because the relevant decision-makers are biased or have already rejected the relief he seeks. To the contrary, on March 26, 2020, the Attorney General issued a memo directing BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic." (Available at https://www.bop.gov/resources/news/pdfs/20200405_covid-19_home_confinement.pdf). On April 3, 2020, the Attorney General issued another memo to BOP stating, in part,

> [T]he CARES Act now authorizes me to expand the cohort of inmates who can be considered for home release upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons. I hereby make that finding and direct that, as detailed below, you give priority in implementing these new standards to the most vulnerable inmates at the most affected facilities[.]

(Available at https://www.justice.gov/file/1266661/download).

Consistent with those directives, BOP reports that it has started the process of "immediately reviewing all inmates who have COVID-19 risk factors, as described by the CDC…to determine which inmates are suitable for home confinement." *See* https://www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last visited Apr. 15, 2020). BOP stresses:

> **Inmates do not need to apply to be considered for home confinement**. Case management staff are urgently reviewing all inmates to determine which ones meet the criteria established by the Attorney General. The Department has also increased resources to review and make appropriate determinations as soon as possible.
>
> While all inmates are being reviewed for suitability, any inmate who believes they are eligible may request to be referred to Home Confinement and

> provide a release plan to their Case Manager. The BOP may contact family
> members to gather needed information when making decisions concerning
> Home Confinement placement

*Id.* (emphasis in original). Together with its consideration of all inmates—and in particular the most vulnerable—for home confinement, the BOP is promptly considering requests for compassionate release.

In light of the Attorney General's directives to BOP and BOP's corresponding actions, this is not a time when defendant's pursuit of administrative remedies within BOP could be deemed futile from an *ex ante* perspective or provide a basis for waiving the exhaustion requirement in § 3582(c)(1)(A). Here, the BOP has had only *one day* to consider Thompson's request for compassionate release; given the urgent efforts being made to protect inmates from infection and to transfer vulnerable inmates out of the institution where Thompson is currently housed, there is no basis to conclude that his request will not be considered long before the 30 days permitted by § 3582(c)(1) have elapsed. Indeed, as explained below, the BOP has already made arrangements for defendant's transfer to home confinement, which will remove him from the COVID-19 outbreak now being experienced at the institution where he is currently housed.

Regarding the second exception to non-statutory exhaustion rules, this is not a case where exhaustion should be excused because BOP's administrative process is incapable of granting defendant the relief he seeks. The Attorney General's memos make clear that BOP has an array of options, including but not limited to compassionate release, that it can use to provide defendant with the relief he seeks and obviate the need for further litigation before this Court.

The core of defendant's argument for waiver of the statutory exhaustion requirement is that without waiver, he will suffer undue prejudice in the form of adverse health outcomes because being housed at an RRC presents the same risks of COVID-19 infection as being incarcerated at FCI Butner Medium I. Now that the BOP has agreed to transfer Thompson directly to home confinement, this is no longer an issue.

In sum, there is no question that Thompson's institution has a large number of COVID-19 cases, or that Thompson suffers from health conditions that make him more vulnerable; for those and other reasons, the government agrees that Thompson is deserving of relief. However, under the circumstances in this case, there is no basis—legal or factual—for excusing the statutory exhaustion requirement, particularly given that the BOP has had only a single day to consider defendant's request for compassionate release, and there is every reason to believe that the BOP will make a determinate well before the 30 days permitted by the statute have elapsed. Pursuant to the statutory framework that Congress has devised, BOP must be given the opportunity to make a decision concerning defendant's request.

## CONCLUSION

For the reasons set forth above, defendant's motion should be denied without prejudice so that BOP can consider defendant's request for compassionate release and home confinement. In the alternative, the government recommends that the Court hold the motion in abeyance for some reasonable period to allow BOP an opportunity to make a decision on his pending petition.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:  /s/ *Jacqueline Stern*
JACQUELINE STERN
Assistant U.S. Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-5329

## **CERTIFICATE OF SERVICE**

Jacqueline Stern, an Assistant United States Attorney assigned to the instant matter,

hereby certifies that the

### **GOVERNMENT'S RESPONSE TO DEFENDANT'S EMERGENCY MOTION FOR RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

was served on April 17, 2020, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P.

5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district

court's system as to ECF filers.

*/s/ Jacqueline Stern*
JACQUELINE STERN
Assistant United States Attorney
219 South Dearborn Street
Fifth Floor
Chicago, Illinois 60604
(312) 353-5329